```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
___

```
 GERALD JEFFREY SLACK,

                         Plaintiff,
            -vs-                          No. 1:14-CV-00200 (MAT)
                                          DECISION AND ORDER
 CAROLYN W. COLVIN, ACTING
 COMMISSIONER OF SOCIAL SECURITY,
                         Defendant.
```
___

**I.  Introduction**

Represented by counsel, Gerald Jeffrey Slack ("plaintiff") brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

**II.  Procedural History**

The record reveals that in May 2011, plaintiff (d/o/b April 3, 1981) applied for DIB, alleging disability as of October 2010. After his applications were denied, plaintiff requested a hearing, which was held before administrative law judge Donald T. McDougall ("the ALJ") on October 19, 2012. The ALJ issued an unfavorable

decision on November 6, 2012. The Appeals Council denied review of that decision and this timely action followed.

### III. Summary of the Evidence

The record reveals that plaintiff was injured in a 20-foot fall from a deer hunting tree stand on October 17, 2010. Plaintiff underwent two surgeries, on October 17 and 21, in the immediate aftermath of the injury. These surgeries, performed by orthopedic surgeon Dr. John Paul Ketz, addressed fractures plaintiff had sustained to his left and right tibias, left fibula, and left calacaneus (heel) and navicular (ankle) bones. On November 11, 2010, plaintiff underwent a third surgery to remove hardware in his right distal fibula, and to perform irrigation and debridement of the open postoperative wound in his right ankle.

Subsequently, plaintiff received follow-up treatment from Dr. Ketz, and engaged in physical therapy ("PT") at Medina Memorial Hospital. From December through March 2011, Dr. Ketz consistently noted that plaintiff was "progressing well." T. 223-30. PT treatment notes indicate that on March 30, 2011, Dr. Ketz "[felt plaintiff] should obtain full ankle mobility," and kept plaintiff out of work for three months. T. 355. In April 2011, it was noted that plaintiff no longer required an ankle brace when performing outdoor activities. A May 2011 PT discharge summary noted that plaintiff "ambulate[d] without [a] device with minimal gait deviation due to [left] stride strength." T. 354. He was discharged

to a home exercise program and it was noted that his overall progress was good.

In September 2011, Dr. Donna Miller completed an internal medicine examination at the request of the state agency. On physical examination, plaintiff's gait was "slightly hesitant"; he declined to perform a heel/toe walk or squat; and his stance was normal but he used a cane "for weightbearing and balance." T. 370. Plaintiff had full ROM of his left ankle but right ankle flexion was limited to five degrees dorsiflexion and 15 degrees plantar flexion. Dr. Miller opined that plaintiff had "moderate limitation for long standing and walking, kneeling and squatting." T. 372.

Dr. Ketz completed a medical source statement of the ability to do work-related activities (physical) in November 2011. According to Dr. Ketz, plaintiff could frequently lift 20 pounds; stand and/or walk for less than one hour in an in an eight-hour workday; must periodically alternate sitting and standing; and could not push or pull with the lower extremities. Dr. Ketz also opined that plaintiff could never climb, balance, kneel, crouch, crawl, or stoop, specifically commenting that he could not perform these actions due to pain and that he was "awaiting surgery for hardware removal." T. 381.

In January 2012, Dr. Ketz performed another surgery to remove hardware from plaintiff's right ankle and left knee. Dr. Ketz recommended continued PT and continued work on ROM. Dr. Ketz noted

that plaintiff "continues out of work," and had a "lifting restriction of less than 5 pounds." T. 389.

Radiology reports obtained postoperatively showed that plaintiff's left tibial fracture was "essentially healed," and plaintiff's right ankle was healed with "[n]o apparent hardware complications." T. 413. In September 2012, plaintiff reported to his primary care physician, Dr. Anna Lamb, that he had pain in his right and left ankles, especially when sitting or standing for too long. Physical examination, however, was normal, and Dr. Lamb noted a normal gait.

**IV.  The ALJ's Decision**

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2014. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since October 17, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: multiple fracture of the left and right lower extremities, with open reduction internal fixation of the left tibia, right distal tibia and fibula; external fixation of the right ankle; and closed treatment of the left heel and left foot.

Before proceeding to step four, the ALJ determined that, considering all of plaintiff's impairments, plaintiff retained the RFC to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) in that plaintiff could stand and walk for a total of one hour per day; required change of position every half hour; could not push or pull with the lower extremities; and could not tolerate exposure to extremes of heat, cold, wetness, humidity, or other hazards.

At step four, the ALJ found that plaintiff could not perform past relevant work as an auto body mechanic or farm worker. At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy which plaintiff could perform. Accordingly, he found that plaintiff was not disabled.

**V. Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A. Treating Physician's Opinion

Plaintiff contends that the ALJ erred by rejecting certain portions of Dr. Ketz's medical source statement. Plaintiff's first contention is that the ALJ mischaracterized Dr. Ketz's opinion in stating that plaintiff could walk for one hour in an eight-hour workday, where Dr. Ketz actually opined that plaintiff could walk for *less* than one hour in an eight-hour workday.

The ALJ gave great weight to Dr. Ketz's opinion, which he characterized as opining that plaintiff could walk for one hour in an eight-hour workday. While it is true that Dr. Ketz actually stated that plaintiff could walk for *less* than one hour, as plaintiff argues, the Court does not find the ALJ's characterization inconsistent with Dr. Ketz's opinion. First, Dr. Ketz's opinion specifically stated that plaintiff would experience "continued pain" upon "standing [for more than] one hour," noting that plaintiff was awaiting hardware removal. T. 381. Thus, Dr. Ketz himself interpreted the restriction as meaning that plaintiff could not stand for more than one hour – not that he could stand for significantly less than one hour. Second, plaintiff himself testified that he could stand for up to one hour. T. 35 ("I can't stand more than one hour."). Thus, the Court finds that the ALJ's characterization of the ALJ's opinion in this regard, as well as his inclusion of a one-hour limitation in his hypothetical to the vocational expert ("VE"), was not error.

6

Plaintiff next contends that the ALJ erred in rejecting Dr. Ketz's opinion that plaintiff could never climb, balance, kneel, crouch, crawl, or stoop. The ALJ rejected that portion of Dr. Ketz's opinion, finding that the evidence of record did not support such a limitation, and noting that the limitations "may have been temporary due to the claimant's complaints of pain and impending hardware removal." T. 24.

The ALJ's rejection of this portion of the opinion was not error. See Pavia v. Colvin, 2015 WL 4644537, *4 (W.D.N.Y. Aug. 4, 2015) (noting that it is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report") (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)). The record indicates that plaintiff's overall condition improved steadily in the months following his accident. Dr. Ketz's commentary noting that plaintiff was "awaiting surgery for hardware removal" is especially significant, because this comment indicated that the opined limitations were a result of that fact. T. 381. Approximately eight months following his hardware removal surgery, plaintiff presented to Dr. Lamb and had a normal physical examination and normal gait.[1]

---

[1] This treatment note was provided to the Appeals Council, and made part of the administrative record, following the ALJ's decision. See Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) ("[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision.").

Thus, substantial evidence supports the ALJ's decision to reject this portion of Dr. Ketz's opinion.

**B.   Step Two Finding**

Plaintiff contends that the ALJ erred, at step two of the sequential evaluation, in failing to find his "functional illiteracy" a severe impairment. In support of this argument, plaintiff points to education records dated 1995 through 2000. These records included plaintiff's eleventh grade individual education plan ("IEP"), which was him assessed as having a "severe reading deficit along with acquisition of [and] application of writing skills." T. 115. Testing indicated that when in tenth grade, plaintiff's reading level was at grade 3.7, and comprehension level was at grade 4.8.

Plaintiff's argument is unavailing. The testing and scores to which plaintiff refers predate his application by approximately 11 to 16 years. Moreover, plaintiff concedes that he graduated high school. Although the regulations provide that a person is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name," see 20 C.F.R. § 404.1564(b)(1), there is no indication in this record that such is the case for plaintiff. The fact that he needed additional assistance in test-taking, including having tests read to him in certain circumstances, does not substantiate his claim that he is functionally illiterate more than

a decade later. Even if he was, that fact alone would not support a finding of disability. See, e.g., Priel v. Astrue, 2010 WL 184329, *3 (W.D.N.Y. Jan. 15, 2010), aff'd, 453 F. App'x 84 (2d Cir. 2011) ("The Social Security Regulations indicate that a claimant is not disabled simply because he is functionally illiterate.").

Moreover, the hypothetical questions the ALJ posed to the VE incorporated reading limitations consistent with a third grade, or level one,[2] reading level. It is thus clear that the ALJ considered plaintiff's reading limitations in coming to his RFC determination. See Priel, 2010 WL 184329, at *3 ("It is also illogical to conclude that the DOT's apparent 'literacy requirement' trumps the testimony of a VE, especially when that VE was asked a proper hypothetical question."). "As a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process." Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (internal quotation marks and citations omitted). Therefore, even if an error had occurred at step two, it would be harmless. See Panaro v. Colvin, 2016 WL 309540, *5 (W.D.N.Y. Jan. 26, 2016).

---

[2] The Dictionary of Occupational Titles defines level one reading as the ability to "[r]ecognize the meaning of 2,500 (two-or three-syllable) words[,] [r]ead at rate of 95-120 words per minute[,] [and] [c]ompare similarities and differences between words and between series of numbers." DOT 344.677-014.

**C.    Credibility**

Finally, plaintiff contends that the ALJ erred in evaluating his credibility. The Court disagrees. The ALJ's discussion of plaintiff's credibility properly followed the two-step credibility analysis and applied 20 C.F.R. § 404.1529 and SSR 96-7p in assessing plaintiff's credibility. See Britt v. Astrue, 486 F. App'x 161, 164 (2d Cir. 2012) (finding explicit mention of 20 C.F.R. § 404.1529 and SSR 96–7p as evidence that the ALJ used the proper legal standard in assessing the claimant's credibility). Plaintiff takes issue with the ALJ's summary of his daily activities; however, the ALJ's decision did not misstate any of plaintiff's reported activities. Plaintiff reported that he was able to cook microwave meals, supervise his children, and continue his hobby of fishing, as the ALJ noted.

Plaintiff also argues that the ALJ erred in considering that plaintiff reported ceasing his prescribed pain medications and discontinuing use of his ankle brace. However, "[c]redibility determinations, including a claimant's characterizations about symptoms and compliance with medication, are indisputably the purview of the ALJ." Fratello v. Colvin, 2014 WL 4207590, *14 (S.D.N.Y. Aug. 20, 2014), report and recommendation adopted sub nom., Fratello v. Comm'r of Soc. Sec., 2014 WL 5091949 (S.D.N.Y. Oct. 9, 2014)(citing SSR 96-7p ("[T]he individual's statements may be less credible. . . if the medical reports or records show that

the individual is not following the treatment as prescribed and there are no good reasons for this failure.")). Although plaintiff argues that he stopped taking medication because of side effects, as the ALJ noted, the record does not support that contention. See T. 349 (plaintiff reported that he did not take his pain medication "as a rule," noting no side effects); 355 (noting that although Dr. Ketz had instructed plaintiff to wear ankle brace, plaintiff elected not to do so stating that he would "progress faster without it").

Finally, plaintiff argues that the ALJ gave insufficient consideration to his work history when assessing credibility. As the Commissioner points out, work history is "'just one of many factors' appropriately considered in assessing credibility." Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (quoting Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998)). Here, it is clear from the ALJ's decision that he considered plaintiff's complaints concerning the intensity, persistence, and functional limiting effects of his symptoms against the entire record. Therefore, ALJ's credibility finding will not be disturbed.

**VI. Conclusion**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 9) is denied and the Commissioner's motion (Doc. 14) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and

accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

                                        **S/Michael A. Telesca**
                                        HON. MICHAEL A. TELESCA
                                        United States District Judge

Dated:   February 12, 2016
        Rochester, New York.